[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11315

_____

JAIME FAITH EDMONDSON,
ANA CHERI (MORELAND),
CARRIE MINTER,
CIELO JEAN GIBSON,
CORA SKINNER, et al.,

Plaintiffs-Appellees,

*versus*

VELVET LIFESTYLES, LLC,
formerly known as Velvet Lifestyles, Inc.
d.b.a. Miami Velvet,
JOY DORFMAN,
a.k.a. Joy Zipper,
MY THREE YORKIES, LLC,

2                          Opinion of the Court                    20-11315

Plaintiffs-Third Party Defendants-Appellants,

PRESIDENT OF VELVET LIFESTYLES, et al.,

Plaintiffs-Third Party Defendants,

JLFL CONCEPTS, LLC, et al.,

Defendants-Third Party.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:15-cv-24442-JEM

————————————

Before JORDAN, JILL PRYOR, and MARCUS, Circuit Judges.

JORDAN, Circuit Judge:

My Three Yorkies, LLC and Joy Dorfman appeal the district court's final judgment, which awarded over 30 plaintiffs damages for false advertising and false endorsement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), following the entry of summary judgment on liability and a jury award of damages. With the benefit of oral argument, and following a review of the record, we reverse. There was not enough evidence to support the entry of summary

judgment against Yorkies or Mrs. Dorfman, and as a result the damages awards cannot stand.

I

Miami Velvet operated as a swingers' nightclub in Miami, Florida. It was "a private, members-only club marketing and catering locally [to] individuals who engage[d] in the 'swinger,' or open relationship[,] lifestyle and who [sought] to regularly attend events where they c[ould] participate in those activities." The club spent "thousands of dollars per year" advertising its events "using the internet, including social media and email." Third-party independent contractors and/or employees created the club's marketing and promotional materials. Some of these advertisements included unauthorized photographs of the plaintiffs, who are "professional model[s], actress[es,] and/or businesswom[e]n who earn[ ] or ha[ve] earned a living by promoting [their] image."

The appellants in this case, Yorkies and Mrs. Dorfman, were connected to Miami Velvet via its corporate and management structure. Simply stated, they were Miami Velvet's managers.

The management structure was as follows. Miami Velvet was owned, operated, and managed by Velvet Lifestyles, LLC. Mrs. Dorfman was the president, manager, and a salaried employee of Velvet Lifestyles. Yorkies, meanwhile, was the managing member of Velvet Lifestyles, and Mrs. Dorfman was, in turn, the managing member of Yorkies. She was also the president of Yorkies and received the management fees that Velvet Lifestyles paid Yorkies. The parties dispute whether Yorkies, Mrs. Dorfman, and

Velvet Lifestyles relied exclusively on third-party independent contractors and/or employees for Miami Velvet's advertising and promotions and whether they also exercised control over the images used in advertising and promotions for Miami Velvet.

A number of plaintiffs—32 in total—brought claims against Velvet Lifestyles, Mrs. Dorfman, and Yorkies for false advertising and false endorsement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). They sought injunctive relief and damages, and requested a jury trial. They alleged that their images were used in advertisements for Miami Velvet without their consent and without payment, and in such a way that implied that they were affiliated with and endorsed Miami Velvet.[1]

Mrs. Dorfman moved for summary judgment, arguing that the plaintiffs had failed to pierce the corporate veil or show that she participated in the Lanham Act violations as required to hold her individually liable. In response, the plaintiffs argued that her motion was procedurally deficient, that the declarations she presented should be disregarded, and that the corporate veil between Mrs. Dorfman and the corporate entities should be pierced. In support

---

[1] The plaintiffs are Jaime Faith Edmondson, Ana Cheri (Moreland), Carrie Minter, Cielo Jean Gibson, Cora Skinner, Danielle Ruiz, Eva Pepaj, Heather Depriest, Irina Voronina, Jesse Golden, Jessica Burciaga, Jessica Hinton, Joanna Krupa, Jordan Carver, Katerina Van Derham, Kim Cozzens, Laurie Fetter (Jacobs), Lina Posada, Maria Zyrianova, Marketa Kazdova, Masha Lund, Maysa Quy, Paola Canas, Rachel Bernstein (Koren), Sandra Valencia, Sara Underwood, Tiffany Toth, Vivian Kindle, Melanie Iglesias, Brenda Lynn Geiger, Heather Rae Young, and Rosa Acosta.

of the latter argument, the plaintiffs pointed to certain undisputed facts—that Mrs. Dorfman had a management role in Velvet Lifestyles and Yorkies; that she was paid a salary; that she received the management fee from Yorkies; and that she was "the beneficiary of funds" from the corporate entities. The district court did not reach the merits of Mrs. Dorfman's arguments because it dismissed the summary judgment motion on procedural grounds—it ruled that the motion was not filed with a statement of material facts as required by local rule.

The plaintiffs also moved for summary judgment against Velvet Lifestyles, Mrs. Dorfman, and Yorkies, arguing that because the defendants conceded that they used the unauthorized images for advertisements, all the elements of their false advertising and false endorsement claims were satisfied. The plaintiffs did not make any arguments to pierce the corporate veil, but stated summarily that there was "no functional distinction between" Velvet Lifestyles and Yorkies and that they were "equally [as] culpable" as Mrs. Dorfman.[2]

In response, the defendants asserted that plaintiffs had not established all the required elements for their claims. They also argued that "[n]either the 'corporate defendants,' nor [Mrs.] Dorfman [we]re culpable" for the infringing conduct and that "[t]he

---

[2] Significantly, the plaintiffs did not brief the standard for individual liability under the Lanham Act. Nor did they attempt to show that Mrs. Dorfman was liable under that standard.

corporate entities [we]re distinct" entities, pointing to the management structure.

The district court granted the plaintiffs' summary judgment motion as to liability on both Lanham Act claims. It considered the advertisements with the plaintiffs' images and concluded that they constituted false advertisements and false endorsements under the Lanham Act. It did not, however, discuss any evidence or make any findings regarding Mrs. Dorfman's or Yorkies' direct involvement with the relevant advertisements, beyond briefly noting the parties' dispute about whether the defendants or the third-party independent contractors were responsible for controlling and creating the advertisements. Nor did the court discuss or apply the Lanham Act's individual liability standard to Mrs. Dorfman.[3]

The district court also concluded that there were genuine issues of material fact as to damages and prejudgment interest and denied summary judgment as to those issues. Those issues later went to trial before a different district judge.

After the plaintiffs had rested their case-in-chief at trial, the defendants made a motion for judgment as a matter of law arguing that, among other things, the plaintiffs did not introduce any

---

[3] The district court also granted summary judgment in favor of the plaintiffs as to injunctive relief and denied summary judgment to the third-party defendants—JLFL Concepts, LLC, Jessica Swinger, and Jesse Swinger—who were brought into the case by Velvet Lifestyles as the parties who purportedly created the advertisements in question. We note that Jessica and Jesse Swinger, a married couple, do not participate in the swinger lifestyle.

evidence on which damages could be attributable to Mrs. Dorf-man.  The district court did not rule on that motion.  The jury awarded damages to each of the plaintiffs against all three defendants (Velvet Lifestyles, Yorkies, and Mrs. Dorfman).  The amounts awarded to each plaintiff ranged from $12,500 to $65,000.  The court subsequently entered final judgment on the jury verdict.

Mrs. Dorfman later renewed her motion for judgment as a matter of law, arguing that the plaintiffs lacked evidence that she was involved in the club, its marketing generally, or the plaintiffs' images specifically.  She maintained that, under the applicable law, the plaintiffs had to pierce the corporate veil or show that the Lanham Act's individual liability standard was met and they had showed neither.  The district court denied the renewed motion because (1) this was not the same argument Mrs. Dorfman raised in her first motion for judgment as a matter of law and (2) the argument went to liability, but the trial had been limited to damages given the prior entry of summary judgment.

Yorkies and Mrs. Dorfman—but not Velvet Lifestyles—appealed.

## II

Yorkies and Mrs. Dorfman challenge the district court's grant of summary judgment against them as to liability.  We review the grant of summary judgment *de novo*, "applying the same legal standards used by the district court." *Yarbrough v. Decatur Hous. Auth.*, 941 F.3d 1022, 1026 (11th Cir. 2019).

"Summary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use." *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 612 (5th Cir. 1967). At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. So a claim should go to trial if "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In contrast, "[a] motion for summary judgment should be granted when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting Fed. R. Civ. P. 56(c)). If there is not sufficient evidence for a jury to find for the non-moving party, or "[i]f the evidence is merely colorable," or if it "is not significantly probative," then summary judgment is appropriate. *See Anderson*, 477 U.S. at 249–50 (internal citations omitted).

Under Rule 56, the initial burden is on the party seeking summary judgment to identify the portions of the record that it believes show the absence of a genuine issue of material fact and to

show that it is entitled to judgment as a matter of law. *See Cohen*, 83 F.3d at 1349. If the moving party fails to show that "the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute," then summary judgment should be denied—even if "the non-moving party has introduced no evidence whatsoever." *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1246 (11th Cir. 1999) (citations omitted). Only when the moving party has carried its burden must the non-moving party show the existence of a genuine issue of material fact in order to avoid summary judgment. *See id.* Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III

The Lanham Act imposes civil liability on

> [a]ny person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1)(B). A false advertising claim under the Lanham Act requires proof that the defendant "made false or

misleading statements" and that "the statements deceived, or had the capacity to deceive, consumers." *Belcher Pharms., LLC v. Hospira, Inc.*, 1 F.4th 1374, 1378 (11th Cir. 2021) (citation and internal quotation marks omitted). We have yet to recognize a separate claim for false endorsement under the Lanham Act that is distinct from trademark infringement. *See Tana v. Dantanna's*, 611 F.3d 767, 777 n.9 (11th Cir. 2010). But generally such a claim involves proof that the defendant used the name or likeness of a person in a manner that is likely to cause confusion among consumers as to the affiliation, connection, or association between that person and the defendant's goods or as to that person's sponsorship or approval of the defendant's goods. *See generally Unique Sports Prods., Inc. v. Wilson Sporting Goods Co.*, 512 F. Supp. 2d 1318, 1324 (N.D. Ga. 2007) (citing cases from the Sixth and Ninth Circuits).

Here the advertisements with the plaintiffs' images were created for and used by Velvet Lifestyles. But the plaintiffs did not just sue Velvet Lifestyles; they also sued Yorkies and Mrs. Dorfman. To prevail on their false advertising and false endorsement claims against Yorkies, the plaintiffs had to show that Yorkies itself engaged in or participated in the prohibited conduct along with Velvet Lifestyles (direct liability) or that the corporate veil between Yorkies and Velvet Lifestyles should be pierced (indirect liability). *See generally* Stephen B. Presser, Piercing the Corporate Veil: Particular Federal Subject Matter Areas—Copyright Infringement and the Lanham Act § 3:17 (Sept. 2021 update). *Cf. U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1043 (9th Cir. 1986) (applying state

alter-ego law in evaluating damages in a Lanham Act case).  With respect to Mrs. Dorfman, the plaintiffs had to show that she "actively and knowingly caused the infringement" or the false advertisements or false endorsements. *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).  As we have explained, "[t]he individual liability standard [under the Lanham Act] does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether [s]he actively participated as a moving force in the *decision* to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Id.* at 1478 n.8.  Under this standard, a "corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity" is personally liable.  *See Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994).

The plaintiffs did not satisfy their burden of showing the absence of a genuine issue of material fact regarding whether Yorkies and Mrs. Dorfman were responsible for the Lanham Act violations. Rather than making the necessary showing in their motion for summary judgment, the plaintiffs simply treated Velvet Lifestyles, Yorkies, and Mrs. Dorfman as one and the same.  They exclusively discussed the defendants collectively in the argument section of their motion, presumably operating on the mistaken assumption that if Velvet Lifestyles was liable for violating the Act, so were Yorkies and Mrs. Dorfman.  Unfortunately, the district court presiding over the summary judgment motion operated under this same assumption, never distinguishing between the three defendants during its analysis of the plaintiffs' motion.

As we explain below, it was the plaintiffs' burden to show factually and legally that Yorkies and Mrs. Dorfman were liable under the Lanham Act, *see Herzog*, 193 F.3d at 1246, and they failed to do so. We therefore reverse the district court's grant of summary judgment on liability against Yorkies and Mrs. Dorfman.

## A

The arguments now raised by Yorkies and Mrs. Dorfman—that the corporate veil was not pierced so that Velvet Lifestyles' actions could be attributed to Yorkies and that the individual liability standard was not met as to Mrs. Dorfman—were not considered by the district court. Although Mrs. Dorfman argued in her own summary judgment motion that the individual liability standard applied to her and had not been satisfied, the court did not address that motion on the merits. And Mrs. Dorfman did not repeat that argument in response to the plaintiffs' own summary judgment motion. Nor did she and Yorkies argue that the plaintiffs failed to treat the defendants as separate entities (beyond a brief assertion that they, and Velvet Lifestyles, were distinct entities who were not "culpable" of the infringing conduct). It was not until her renewed motion for a judgment as a matter of law, the merits of which the district court also did not consider, that Mrs. Dorfman again pointed out that the individual liability standard had not been met. And it was not until appeal that Yorkies argued that the plaintiffs and the district court erred by failing to properly treat it as separate from Velvet Lifestyles.

Though it would have been better practice for Yorkies and Mrs. Dorfman to present their arguments squarely or to ask for reconsideration of the summary judgment order, they did not abandon their arguments, and we must still consider them. The reason is that Yorkies and Mrs. Dorfman were only obligated to respond to the plaintiffs' actual Rule 56 arguments and theories. Because the plaintiffs never argued or established that the entities should be treated as one or that Mrs. Dorfman was individually involved, they did not meet their summary judgment burden. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970) ("Because [the moving party] did not meet its initial burden . . . , [the non-moving party] here was not required to come forward with suitable opposing [evidence]."). Again, it was the plaintiffs' burden to set out the appropriate legal standards and to show entitlement to judgment as a matter of law under those standards. *See Herzog*, 193 F.3d at 1246. And because they did not satisfy that burden, any ensuing failures by Yorkies and Mrs. Dorfman under Rule 56 or Rule 50 are inconsequential.

## B

We'll discuss the defendants separately. We begin with Yorkies and then turn to Mrs. Dorfman.

## 1

The plaintiffs and the district court assumed that Velvet Lifestyles and Yorkies were not separate entities and could be treated the same, but they were mistaken. Corporations like Velvet Lifestyles and Yorkies are presumed to be distinct "legal entit[ies,]"

even though Yorkies is the managing member of Velvet Lifestyles. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011). "The purpose of this fiction is to limit the liability of the corporation's owners, whether they be individuals or other corporations," and Florida law is not willing to "easily disregard this fiction." *Id.*

> Those who utilize the laws of this state in order to do business in the corporate form have every right to rely on the rules of law which protect them against . . . liability unless it be shown that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing of the corporate veil. This is the reason for the rule, stated in all Florida cases, that the courts are reluctant to pierce the corporate veil and will do so only in a court of competent jurisdiction, after notice to and full opportunity to be heard by all parties, and upon showing of cause which necessitates the corporate entity being disregarded in order to prevent some injustice.

*Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120–21 (Fla. 1984). Because the plaintiffs did not argue or establish that the corporate veil should be pierced in their motion for summary judgment, we must treat Velvet Lifestyles and Yorkies as distinct entities. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and

20-11315                Opinion of the Court                15

raised for the first time in an appeal will not be considered by this court.") (quotation marks omitted).[4]

As Yorkies is a separate entity from Velvet Lifestyles, the plaintiffs had to show that Yorkies itself was directly involved in the Lanham Act violations, and they failed to do so. *See Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018) (holding that a defendant is liable for false advertising under the Lanham Act if it made false or misleading statements which affected consumers and injured the plaintiff). The plaintiffs never produced any evidence demonstrating what Yorkies had done. At most, they argued that Yorkies did not remove the infringing images, but that is not enough for direct liability. *See* Trademark Infringement and Dilution Claims, Remedies, and Defenses, Practical

---

[4] Even if we did consider the plaintiffs' veil-piercing argument for the first time now, we would conclude on this record that the plaintiffs did not show the necessary misconduct or control by Yorkies. *See Molinos Valle Del Cibao*, 633 F.3d at 1349 (to pierce the corporate veil in Florida, "the plaintiff must prove . . . (1) [that] the [owner] dominated and controlled the corporation to such an extent that" the corporation did not have an "independent existence" and the owner was its alter-ego; "(2) [that] the corporate form must have been used fraudulently or for an improper purpose;" and (3) that the use "caused injury to the claimant"). *See also Steinhardt v. Banks*, 511 So. 2d 336, 339 (Fla. 4th DCA 1987) (summarizing improper conduct as creating the corporation as "a mere device or sham to accomplish some ulterior purpose . . . where the purpose is to evade some statute or to accomplish some fraud or illegal purpose, or where the corporation was employed by the stockholders for fraudulent or misleading purposes, was organized or used to mislead creditors or to perpetuate a fraud upon them, or to evade existing personal liability") (citation omitted).

Law Practice Note 1-508-1019 (2022 Westlaw) (distinguishing between direct liability, which requires the defendant's use of the mark, and secondary liability—either vicarious or contributory—which only requires that the defendant either have "a close relationship with the direct infringer" or induce, enable, or assist the direct infringement, respectively).[5]

The plaintiffs instead only point to evidence that shows that Yorkies was linked to Miami Velvet and Velvet Lifestyles through the governing management structure. They rely on deposition testimony indicating that Yorkies was the managing member of Velvet Lifestyles and that Velvet Lifestyles in turn ran Miami Velvet. They also highlight evidence that Yorkies received management fees from Velvet Lifestyles (which ultimately were given to Mrs. Dorfman). But they did not show that Yorkies itself took any action whatsoever regarding the management of Miami Velvet, or the creation and placements of its advertisements. Instead, they cite to evidence showing what other individuals—such as Randy Dorfman and Miami Velvet's general manager, Jason Silvera—did without demonstrating how, if at all, those individuals were connected to Yorkies (other than, again, the general management

---

[5] The plaintiffs have not made a contributory liability argument as to Yorkies. See Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC, 932 F.3d 1303, 1311 (11th Cir. 2019) ("Under the Lanham Act, the owner of a registered trademark may hold someone contributorially liable for trademark infringement if that person induces or knowingly facilitates the infringement."). Such a claim would require a showing of intentional inducement, actual knowledge, or constructive knowledge. See id. at 1312.

structure). But that is not enough under the Lanham Act. As we've already discussed, the ownership link between these organizations is insufficient to make Yorkies directly liable.

## 2

The parties agree that the Lanham Act's individual liability standard applies to Mrs. Dorfman. If the plaintiffs did not meet their burden as to Yorkies, they certainly did not meet their burden as to Mrs. Dorfman and her personal liability.[6]

Because corporations are run by individuals, "[n]atural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act." *Chanel, Inc.*, 931 F.2d at 1477. An individual is personally liable if she "actively and knowingly caused the infringement." *Id.* It is not sufficient to show that the individual "participated or engaged in some infringing act;" the individual must have "actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Id.* at 1478 n.8. In other words, "a corporate officer who directs, controls, ratifies, participates in, or is the

---

[6] We reiterate that although the plaintiffs did make a veil-piercing/alter-ego argument in response to Mrs. Dorfman's motion for summary judgment, the district court dismissed that motion without considering its merits. Even if we did consider the alter-ego argument now, we would conclude that the plaintiffs did not show the necessary misconduct and control by Mrs. Dorfman. *See Molinos Valle Del Cibao*, 633 F.3d at 1349. Being a manager and receiving fees is not enough. *See Steinhardt*, 511 So. 2d at 339.

moving force behind the infringing activity" is personally liable for that infringement. *See Babbit Elecs., Inc.*, 38 F.3d at 1184.

To determine what kind of evidence is relevant, we turn to *Chanel, Inc.*, in which the panel concluded that there was a genuine issue of material fact as to the personal liability of one defendant, but not the other. *See Chanel, Inc.*, 931 F.2d at 1478. In reaching these determinations, the panel considered evidence of the individual defendants' responsibilities and actions, such as their roles and the tasks they performed for the organization. *Id.* The panel also considered evidence of what the individual defendants knew about the infringing activity. *Id.* For example, in holding that there was a genuine dispute regarding the personal liability of defendant Greenberg, the panel noted that he "did look after the showroom when [defendant] Brody was out of town and, in that capacity, may have sold some of the counterfeit merchandise." *Id.* The panel also acknowledged that Greenberg had introduced defendant Brody to potential customers and ultimately sent Brody a fax, warning him that the infringement had been discovered, and removed the infringing goods from the store. *Id.* at 1474–75, 1478.

The panel in *Chanel, Inc.* ultimately held that because "[m]erely selling the items [could] not turn Greenberg into a moving, active, conscious force who caused the infringement" and because "[n]o evidence connect[ed] him to the purchase or promotion of the counterfeit goods," there was a genuine dispute of material fact as to his liability. *Id.* at 1478 & n.8. The panel therefore vacated the summary judgment as to Greenberg. *Id.* In contrast,

there was no genuine issue of material fact as to Brody's personal liability.  Brody (1) was the president and chief executive officer of the infringing corporation, (2) purchased the infringing goods, (3) misleadingly advertised those goods, and (4) operated the showroom where they were sold.  *See id.*

The plaintiffs fail to point to any evidence that Mrs. Dorfman was involved in the Lanham Act violations, let alone that she was a moving force who actively and knowingly caused the false advertisements or false endorsements.  At best the plaintiffs show that she was linked to Velvet Lifestyles and Miami Velvet through the management structure of the several entities at play here.  For example, Mrs. Dorfman was the salaried manager of Velvet Lifestyles and Yorkies, whose management fees she received.  And Velvet Lifestyles ran Miami Velvet, which included doing the advertising for Miami Velvet.  But this evidence is not enough to satisfy their Rule 56 burden under the individual liability standard.  *See Chanel*, 931 F.2d at 1478 (looking at evidence beyond simply the defendants' job titles and status as agents of the corporation).  *See also* 4 McCarthy on Trademarks and Unfair Competition, Personal Liability § 25:24 (5th ed.) ("To be personally liable, corporate officers or directors must do more than merely control corporate affairs: they must personally take part in infringing activities or specifically direct employees to do so.")  There is no evidence in this record that Mrs. Dorfman knew about, was actively involved in, ratified, or was a moving force behind the unlawful activity.

In fact, the plaintiffs themselves provided some evidence that Mrs. Dorfman was not involved. In their statement of undisputed facts, the plaintiffs cited to Mr. Dorfman's testimony that though Mrs. Dorfman was the only member of Velvet Lifestyles, she was "just the named member" of that entity, "[s]he d[id]n't do anything," and she had "[a]bsolutely zero" "operational management responsibilities." The plaintiffs relied on this evidence for another purpose, but it demonstrates that there were at least disputed issues of material fact as to Mrs. Dorfman's individual liability.

### 3

In conclusion, whether Mrs. Dorfman was "a moving, conscious force" and whether Yorkies was involved in the Lanham Act violations are questions of fact that must be answered by a factfinder at trial. *See Chanel, Inc.*, 931 F.2d at 1478 ("[W]hether [the appellant] actively caused the infringement as a moving, conscious force is—given the weak record in this case—a question of fact for the factfinder after trial.").

### IV

The district court erred in granting summary judgment against Yorkies and Mrs. Dorfman on liability under the Lanham Act. We therefore set aside the jury's award of damages as to Yorkies and Mrs. Dorfman, and remand for trial and any further proceedings as the district court sees fit.

**REVERSED AND REMANDED.**