[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10833

_____

D.C. Docket No. 1:14-cv-04122-WBH


SECRETARY, U.S. DEPARTMENT OF LABOR,

                                                      Plaintiff - Appellant,

versus

ROBERT N. PRESTON,
TPP HOLDINGS, INC., d.b.a. The Preston Partnership, LLC,
TPP HOLDINGS INC., EMPLOYEE STOCK OWNERSHIP PLAN

                                                      Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 12, 2017)

Before WILSON and NEWSOM, Circuit Judges, and MORENO,[*] District Judge.

NEWSOM, Circuit Judge:

_____

[*] Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida, sitting by designation.

It is hornbook law that rights of all kinds—even constitutional ones—can be waived. For instance, a criminal defendant might for one reason or another elect to waive his Fourth Amendment freedom from unreasonable searches, his Fifth Amendment privilege against self-incrimination, or his Sixth Amendment right to the assistance of counsel. In the same way, a civil litigant can waive his Seventh Amendment right to a jury trial or his right, rooted in the Fourteenth Amendment, to be free from overbroad assertions of personal jurisdiction. So too, a sovereign State may choose to waive its Eleventh Amendment immunity from suit.

This case also concerns waiver—but not of some fundamental constitutional guarantee. Rather, this case is about … the Employee Retirement Income Security Act of 1974, affectionately (and hereinafter) known as "ERISA." In particular, this interlocutory appeal requires us to determine whether a defendant is capable of expressly waiving the six-year statute of repose contained in ERISA Section 413(1), 29 U.S.C. § 1113(1)—or whether instead, the protection provided by Section 1113(1) is so essential, so fundamental, that it (seemingly almost alone among personal rights) is inherently indefeasible and unwaivable.

We won't bury the lede. In response to the district court's certified question, we answer yes—Section 1113(1)'s statute of repose is subject to express waiver.

**I**

Robert Preston was the owner and CEO of TPP Holdings, Inc., which

2

established the TPP Employee Stock Ownership Plan in 2004 to provide retirement income for TPP's employees. The Secretary of Labor brought this ERISA action alleging that Preston, who also served as the Plan's trustee, breached his fiduciary duties and engaged in prohibited self-dealing when, in 2006 and then again in 2008, he knowingly caused the Plan to purchase his own TPP stock at an inflated price. The Secretary separately alleged that Preston, TPP, and the Plan engaged in assorted other misdeeds (terminating plan participants, failing to pay required distributions, etc.) in 2008.

Prior to filing suit, the Secretary notified Preston, TPP, and the Plan (together, "the defendants") of his claims, and the parties attempted to negotiate a settlement.[1] While the negotiations were ongoing, the parties entered into a series of "tolling agreements" of the sort that are increasingly common in civil litigation. The first such agreement was executed in August 2011; it was then extended three times over the next few years. The final extension, which was inked in May 2014, extended the Secretary's filing deadline until December 31, 2014.

In each of the tolling agreements, the Secretary offered to delay filing any action until a specified date in exchange for the defendants' pledge not to raise a timeliness defense in the event the Secretary later sued. In particular, the

---

[1] Although Hilda Solis was the Secretary of Labor at the time, we refer to "the Secretary" in the masculine form for the sake of consistency, as Alexander Acosta has since assumed the post and the responsibility of defending the office's position in this Court.

3

defendants broadly stipulated that, as to any suit filed by the Secretary during the range of dates specified in the agreements, they would "not assert in any manner the defense of statute of limitations, the doctrine of waiver, laches, or estoppel, or any other matter constituting an avoidance of the Secretary's claims that is based on the time within which the Secretary commenced such action."  The defendants have acknowledged that they entered into the tolling agreements knowingly, willingly, and voluntarily.  *See* Oral Arg. Tr. at 14:10.

The parties ultimately failed to reach a settlement, and the Secretary filed this action on December 30, 2014, one day before the expiration of the agreed-upon tolling period.  Despite their agreements not to assert a time bar, the defendants moved to dismiss the Secretary's complaint on the ground that all claims arising from alleged violations that occurred before December 30, 2008—six years prior to the complaint's filing—were foreclosed by ERISA's limitation-of-actions provision.  That statute, which is at the heart of this case, provides as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
>> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>>
>> (2) three years after the earliest date on which the plaintiff had

4

> actual knowledge of the breach or violation;

> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

In response to the Secretary's contention that they had expressly waived their right to assert a timeliness defense, the defendants asserted that the tolling agreements were invalid and unenforceable. Section 1113(1), they said, "establishes an unyielding statute of repose" that cannot be waived, even by a party's express agreement.

The district court agreed with the defendants and held that because Section 1113(1) constitutes a statute of repose, rather than an ordinary statute of limitations, it "is not subject to waiver—even express waiver." Accordingly, the court dismissed all of the Secretary's claims arising from events that occurred before December 30, 2008.

The Secretary moved for reconsideration, arguing (among other things) that the district court's "categorical" rule that statutes of repose cannot be waived contradicts governing precedent, which instead requires a determination whether the applicable time bar is "jurisdictional." The district court denied the motion, and the Secretary sought leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The district court granted permission and certified the following

question, which this Court agreed to consider: "Is the limitation of actions contained in 29 U.S.C. § 1113 subject to express waiver?"

We turn, then, to a careful examination of that question.[2]

## II

The Secretary and the defendants come at the waiver issue differently. For his part, the Secretary contends that the question turns on whether or not Section 1113(1)'s time bar embodies a "jurisdictional" limitation—because it doesn't, he says, the bar is necessarily waivable. The defendants, by contrast, maintain that Section 1113(1)'s status as a statute of repose (as opposed to limitations) is determinative—statutes of repose, they say, can't be waived, even expressly. We consider the parties' arguments in turn.

## A

Under our precedent, the jumping-off point is *In re Pugh*, 158 F.3d 530 (11th Cir. 1998), which, as the Secretary points out, indicates that the principal criterion in deciding whether a limitations period can be waived is its "jurisdictional" character. In *Pugh*, this Court considered whether debtors had waived the limitations periods contained in two Bankruptcy Code provisions by

---

[2] "We review *de novo* a question of law certified by the district court pursuant to § 1292(b)." *Johnson v. City of Fort Lauderdale*, 148 F.3d 1228, 1229 n.3 (11th Cir. 1998). Although the defendants briefly contend that an abuse-of-discretion standard should apply because the district court denied the Secretary's motion for reconsideration, they acknowledge—and indeed emphasize, correctly—that "[t]his interlocutory appeal presents a purely legal issue of statutory interpretation." Br. of Appellees at 1–2. Accordingly, our review is *de novo*.

failing to raise them as affirmative defenses to an adversary proceeding brought by a bankruptcy trustee. *Id.* at 530. We acknowledged that the waiver issue could "be conceptualized in different ways"—including, as relevant here, either "as a dispute over whether the[] code provisions constitute statutes of repose or statutes of limitations" or, instead, "as a disagreement over whether the[] code provisions constitute grants of subject matter jurisdiction that leave a court without any authority to hear certain proceedings … after the limitations period has elapsed." *Id*. at 533–34. We concluded that the latter approach—keying the waiver determination to the particular time bar's "jurisdictional" character—was "more conducive to reasoned analysis." *Id*. at 533. Pursuant to *Pugh*, then, we begin our assessment of Section 1113(1) by considering whether it limits courts' subject matter jurisdiction—in which case its time bar is not waivable—or is instead a non-jurisdictional claim-processing rule—in which case waiver is permissible. *See id*. at 534. *See also In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035 (11th Cir. 2008) (en banc) (reaffirming *Pugh*'s analytical framework).[3]

Before we get in too deep, a bit of background: In a recent line of decisions, the Supreme Court has set out to impose some discipline on the previously slippery

---

[3] To be clear, *Pugh*'s framework applies beyond the context of the Bankruptcy Code. *Pugh* itself relied on cases involving the Clayton Act and the Interstate Commerce Act, 158 F.3d at 537, and this Court has subsequently relied on *Pugh* in cases interpreting other statutes, *see, e.g.*, *Davenport Recycling Assocs. v. C.I.R.*, 220 F.3d 1255, 1259 (11th Cir. 2000) (Internal Revenue Code).

use of the term "jurisdictional."  *See, e.g.*, *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016); *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015); *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006).  In so doing, the Court has emphasized—repeatedly—that statutory limitation periods and other filing deadlines "'ordinarily are not jurisdictional'" and that a particular time bar should be treated as jurisdictional "only if Congress has 'clearly stated' that it is."  *Musacchio*, 136 S. Ct. at 716–17 (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824–25 (2013)).  Establishing the requisite clear statement requires a party to "clear a high bar"—in particular, by demonstrating that "traditional tools of statutory construction … plainly show that Congress imbued a procedural bar with jurisdictional consequences."  *Kwai Fun Wong*, 135 S. Ct. at 1632.

Against that backdrop, we have little difficulty concluding that Section 1113(1)'s limitations period is not jurisdictional.  Neither Section 1113(1)'s text nor the broader statutory context in which it exists provides any indication—let alone the required clear statement—that its limitations period is intended to curtail a reviewing court's jurisdiction.

First, and most importantly, Section 1113(1)'s language does not "'speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'"

8

*Arbaugh*, 546 U.S. at 515 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)); *accord, e.g.*, *Pugh*, 158 F.3d at 538 (same). Congress is plenty capable of erecting a true jurisdictional bar when it wants to—we have pointed, for instance, to the phrase "[n]o court, justice, or judge shall have jurisdiction" as exemplary. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 473–74 (11th Cir. 2015). But when, as here, a statute "speaks only to a claim's timeliness, not to a court's power," it should be treated as non-jurisdictional. *Kwai Fun Wong*, 135 S. Ct. at 1632.

To be clear, and contrary to the defendants' suggestion, Section 1113(1)'s use of mandatory language—"No action may be commenced"—doesn't do the trick. The Supreme Court has flatly "rejected the notion that all mandatory prescriptions, however emphatic, are ... properly typed jurisdictional." *Henderson*, 562 U.S. at 439 (quotation marks omitted). And indeed, the Court has described statutory phrasing much like Section 1113(1)'s―"no action shall be brought"―as "boilerplate," *Jones v. Bock*, 549 U.S. 199, 220 (2007), and has deemed an even stronger proscription―"shall be forever barred"―to be ordinary, non-jurisdictional claim-processing language, *Kwai Fun Wong*, 135 S. Ct. at 1633–38. Under clear Supreme Court precedent, it is only an express reference to jurisdiction, not firmness more generally, that counts. Because Section 1113(1) contains no such reference, it is non-jurisdictional—and thus presumptively

9

waivable.[4]

Statutory context confirms Section 1113(1)'s non-jurisdictional character. The Supreme Court "has often explained that Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional." *Kwai Fun Wong*, 135 S. Ct. at 1633 (collecting cases). Here, Congress placed Section 1113 in Part 4 of ERISA—"Fiduciary Responsibility"—which establishes the substantive standards applicable to plan fiduciaries. *See generally* 29 U.S.C. §§ 1101–1114. In contrast, Congress housed the "Jurisdiction" provisions, which delineate state and federal courts' subject matter jurisdiction over ERISA claims, *id*. § 1132(e), in an altogether separate part of the statute—namely, Part 5, titled "Administration and Enforcement." *See generally id*. §§ 1131–1151. Conferring "jurisdictional" status on Section 1113(1)'s limitations period would thus not only violate the provision's plain language, but would also "disregard the structural divide built into the statute." *Kwai Fun Wong*, 135 S. Ct. at 1633.

\* \* \*

Because we find no clear textual indication that Section 1113(1)'s time bar was intended to limit courts' subject matter jurisdiction, we hold that the provision

---

[4] That Section 1113(1)'s time bar is subject to a "fraud or concealment" exception further underscores that is not jurisdictional. Such express exceptions are "indicative of a certain degree of flexibility that is inherently inconsistent with the jurisdictional label." *Avila-Santoyo v. U.S. Attorney Gen.*, 713 F.3d 1357, 1362 (11th Cir. 2013) (quotation marks omitted); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165 (2010) (observing that it would be "unusual" to ascribe jurisdictional significance to a provision that is subject to textually specified exceptions).

is non-jurisdictional and therefore (under *Pugh*) presumptively waivable.[5]

### B

The defendants have a different way of looking at the waiver issue.  The "jurisdictional" inquiry is not determinative, they say, because even if Section 1113(1) is non-jurisdictional, it might nonetheless be (for other reasons) non-waivable.  In particular, the defendants assert—as the district court held—that jurisdictional considerations aside, because Section 1113(1) is a statute of repose rather than an ordinary statute of limitations, it "is not subject to waiver—even express waiver."  We turn, then, to the questions (i) whether Section 1113(1) is indeed a statute of repose and (ii) if so, whether its status as such renders it non-waivable.

### 1

As an initial matter, we agree with the defendants—and the Secretary, for that matter—that Section 1113(1)'s limitation-of-actions provision is indeed a

---

[5] Before moving on, we pause to clarify one issue—ironically enough, about an allegation of "waiver," albeit of a different stripe.  In their briefing, the defendants repeatedly assert that the Secretary waived "various … arguments raised, and authorities cited"—including *Pugh*—by failing to make or cite them in response to the defendants' motion to dismiss in the district court. *See, e.g.*, Br. of Appellees at 9, 13, 39–40.  The defendants misunderstand the law.  Parties can most assuredly waive positions and issues on appeal, but not individual arguments—let alone authorities. *See, e.g.*, *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992) ("Once a [] claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.").  Offering a new argument or case citation in support of a position advanced in the district court is permissible—and often advisable.  (Were the rule otherwise, we could never expect the quality and depth of argument to improve on appeal—an unfortunate result.)

11

statute of repose, and not a mere statute of limitations. Whereas a statute of limitations establishes a time limit "based on the date when *the claim accrued*," a statute of repose bars "any suit that is brought after a specified time *since the defendant acted*," without regard to any later accrual. Black's Law Dictionary 1636–37 (10th ed. 2014) (emphasis added). Because by its plain terms Section 1113(1) bars any action brought more than six years after the date of the fiduciary's "last action" that constituted the alleged breach—or in the case of an omission the last date on which the fiduciary could have cured the breach, *see* 29 U.S.C. §1113(1)—we think it clear that the time bar is properly classified as a statute of repose.

## 2

But that's just the beginning of the defendants' argument. The real thrust of their position is that, as a statute of repose, Section 1113(1)'s limitations period is inherently and "by definition" non-waivable—even (as in this case) by express agreement. For the reasons explained below, we reject the defendants' position as inconsistent with both law and logic.

### a

First, there is the fact that, overwhelmingly, the authorities cited by the defendants—and also the district court—have nothing to do with express waiver, but rather involve the altogether separate issue of "equitable tolling." *See, e.g.,*

12

*California Public Employees' Ret. Sys. v. ANZ Sec, Inc.*, 137 S. Ct. 2042 (2017);

*CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014); *Rogers v. Nacchio*, 241 F.

App'x 602 (11th Cir. 2007). To be clear, the judge-made doctrine of equitable

tolling has nothing to do with a defendant's waiver, let alone his express waiver.

Indeed, equitable tolling isn't principally concerned with a defendant's conduct at

all—whether, for instance, he relinquished a time bar through inaction or (as here)

affirmatively renounced it. Rather, the equitable-tolling doctrine's focus is on the

plaintiff's particular circumstances and the fairness, given those circumstances, of

holding him to a hard-and-fast filing deadline. *See, e.g.*, Black's, *supra*, at 656.

*Waldburger*, on which the district court chiefly relied, illustrates the

inappositeness of the defendants' cases. There, in the course of deciding whether a

provision contained in the Comprehensive Environmental Response,

Compensation, and Liability Act preempted state statutes of repose, as well as

statutes of limitations, the Supreme Court explored the differences between the two

types of limitations periods. "One central distinction," the Court observed, is that

"[s]tatutes of limitations, but not statutes of repose, are subject to equitable

tolling." 134 S. Ct. at 2183. In explaining that distinction, the Court emphasized

the different policies that underlie statutes of limitations and repose:

> Equitable tolling is applicable to statutes of limitations because their
> main thrust is to encourage the plaintiff to pursue his rights diligently,
> and when an extraordinary circumstance prevents him from bringing a
> timely action, the restriction imposed by the statute of limitations does

13

not further the statute's purpose.  But a statute of repose is a judgment that defendants should be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason.

134 S. Ct. at 2183–84 (internal citations and quotation marks omitted).

That's all well and good as far as it goes, but it doesn't go nearly as far as the defendants' position requires.  Again—and this is the key point—the Court in *Waldburger* observed only that statutes of repose aren't subject to *equitable tolling*.  Our case has nothing to do with equitable tolling; rather, the defendants here executed a series of contracts in which they expressly—and (as they have since acknowledged) knowingly, willingly, and voluntarily—renounced their rights under Section 1113(1).  That express waiver makes this case a whole different ballgame.  The mere fact that a defendant ordinarily won't lose the protection of a statute of repose through no fault (or even act) of his own—as in the equitable-tolling context—says nothing about whether he can expressly disavow that protection.  A statute of repose confers on a defendant a personal privilege of sorts, in the form of an immunity from further liability.  While that privilege can't just be snatched out of the defendant's hand—certainly not, as *Waldburger* confirms, by a squishy doctrine like equitable tolling—there is nothing to prevent the defendant from voluntarily giving it away.

*ANZ* and *Rogers* suffer from the same fundamental defect.  Both are equitable-tolling cases, and thus provide no support for the defendants' more

14

strident position that statutes of repose can't be even expressly waived. *See, e.g.*, *ANZ*, 137 S. Ct. at 2051–55 (holding that the limitation period contained in Section 13 of the Securities Act, 15 U.S.C. § 77m, is a statute of repose not subject to "equitable tolling"); *Rogers*, 241 F. App'x at 605 (holding that the five-year statute of repose in 28 U.S.C. § 1658 is not subject to "tolling principles"). And in fact, *ANZ* boomerangs back around to undermine the defendants' position. There, the Supreme Court observed that even equitable tolling of a statute of repose may be permissible "where there is a particular indication that the legislature did not intend the statute to provide complete repose but instead anticipated the extension of the statutory period under certain circumstances"—as, for instance, where "the statute of repose itself contains an express exception …." 137 S. Ct. at 2050. As an example, the Court cited the fraud-or-concealment exception to 29 U.S.C. § 1113—*the very statute of repose at issue in this case*. *Id.* Logically, if Section 1113(1)'s built-in exception even plausibly opens the door to equitable tolling, then it would seem to clinch the case for enforcing an express waiver.

In fairness, the defendants do cite one express-waiver decision that warrants close consideration. In particular, they assert that *Mid State Horticultural Co. v. Pennsylvania Railroad Co.*, 320 U.S. 356 (1943), supports their contention that allowing a party to waive Section 1113(1)'s protection would frustrate ERISA's "purpose," which the defendants take to be ensuring that the Secretary pursues

15

relief in a timely fashion. *See* Br. of Appellees at 21 n.4, 30, 36–40; Oral Arg. Tr. at 26:52. We cannot agree with the defendants' purpose-driven argument.

The defendants are right that the Supreme Court in *Mid State* considered whether a limitations period contained in the Interstate Commerce Act could be waived "by express agreement." 320 U.S. at 357. The defendants are also right that the Court held that the agreed-to waiver there was "invalid as being contrary to the intent and effect" of the Act, *id.* at 358, which the Court found was to secure "the general public interest in adequate, nondiscriminatory transportation at reasonable rates." *Id.* at 361. The Court reasoned that the Act's limitations period couldn't be waived, even expressly, because enforcing a waiver agreement would undermine the Act's anti-discrimination purpose by advantaging one party over the other. *Id.* at 367.

But *Mid State* didn't purport to impose a blanket rule prohibiting express waivers of statutes of repose. To the contrary, the Court's holding there was by its own description bound up in the specifics of the Interstate Commerce Act and the policies that the Court found underlay it. Here, the same considerations cut the other way. It's true, of course, that limitation-of-actions provisions are generally intended to promote the timely filing of claims. But the defendants' position would frustrate, rather than advance, ERISA's overarching purpose—which the statute's text itself says is to "protect … the interests of participants in employee

16

benefit plans and their beneficiaries … by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, *and by providing for appropriate remedies, sanctions, and ready access to the Federal courts*." 29 U.S.C. § 1001(b) (emphasis added).  We just can't see how refusing to enforce a contractual waiver that all agree was executed knowingly, willingly, and voluntarily—and on that basis dismissing an enforcement action that seeks to recover plan participants' lost retirement savings—could be deemed necessary to the fulfillment of ERISA's stated purpose.  Quite the contrary, it seems to us.[6]

**b**

We come, then, to a second problem with the defendants' position that Section 1113(1)'s statute of repose is inherently non-waivable:  It seems to contradict a well-established background understanding that statutes of repose *are* subject to express waiver.  The North Carolina Supreme Court, for instance, recently concluded that a statute of repose applicable to claims arising out of improvements to real property could be waived by mutual agreement.  *See Christie v. Hartley Const., Inc.*, 367 N.C. 534 (2014).  In so holding, the court emphasized

---

[6] Although the district court didn't rely on it, the defendants have also cited *Harris v. Bruister*, Civ. A. No. 4:10cv77-DPJ-FKB, 2013 WL 6805155 (S.D. Miss. Dec. 20, 2013), in support of their position.  It is true, as the defendants say, that *Harris* is for all practical purposes on point; the court there held that Section 1113(1)'s statute of repose is not subject to express waiver.  It is also true, however, that *Harris* is an unpublished district court decision from another circuit, and that in reaching its conclusion about express waiver the court there relied (we think erroneously) on authorities and sources that addressed only equitable tolling.  *See id*. at *5–*6.  In any event, for reasons stated in text, we find *Harris* unpersuasive and decline to follow it.

17

that it could "see no public policy reason why the beneficiary of a statute of repose cannot bargain away, or even waive, that benefit." *Id.* at 540.  The Supreme Court of Colorado has since reached the same conclusion regarding a statute of repose in that State's Uniform Fraudulent Transfer Act.  *See Lewis v. Taylor*, 375 P.3d 1205 (Colo. 2016).  There's no need to multiply examples, but we could go on and on. *See, e.g.*, *Townes v. Rusty Ellis Builder Inc.*, 98 So. 3d 1046, 1053–55 (Miss. 2012) (holding that, in general, parties can contractually modify statutes of repose); *cf., e.g.*, *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 738 (Tenn. 2013) (holding that party could waive statute of repose even implicitly by failing to timely assert it); *FDIC v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012) (same); *Pinigis v. Regions Bank*, 942 So. 2d 841, 847 (Ala. 2006) (same).

Thus, far from there being a categorical rule prohibiting express waiver of statutes of repose—of the sort that the defendants say prevails in ERISA—there seems to be a broad consensus that such provisions *can* be expressly waived.  We have found no indication that Congress intended to enshrine some contrary—and idiosyncratic—rule in Section 1113(1).

c

Finally, there is good ol' common sense.  Why wouldn't Section 1113(1)'s limitations period be subject to express waiver?  With respect to all manner of personal rights, the Supreme Court has long adhered to what it has called a

18

"presumption of waivability." *United States v. Mezzanatto*, 513 U.S. 196, 200–02 (1995). So, for instance, the Court held more than a century ago that "[a] party may waive any provision … of a statute[] intended for his benefit." *Shutte v. Thompson*, 82 U.S. (15 Wall.) 151, 159 (1872). The same rule prevails today: "[A]bsent some affirmative indication of Congress' intent to preclude waiver," courts are to presume federal "statutory provisions are subject to waiver by voluntary agreement of the parties." *Mezzanatto*, 513 U.S. at 201; *accord, e.g.*, *New York v. Hill*, 528 U.S. 110, 114 (2000) (holding that by "assent[ing] to delay on the applicable time limits" for commencing trial, a criminal defendant waived the right to enforce the deadline). Why a different rule for ERISA's statute of repose? What makes it so special?

For that matter, even *constitutional* rights are subject to express waiver. A civil litigant, of course, can waive his Seventh Amendment right to a jury trial, *see Hodges v. Easton*, 106 U.S. (16 Otto) 408, 412 (1882), as well as his Fourteenth Amendment freedom from overbroad assertions of personal jurisdiction, *see Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982). So too, a sovereign State can waive its Eleventh Amendment immunity from suit. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). Even criminal defendants—in jeopardy of losing life or liberty—"may knowingly and voluntarily waive many of

19

the most fundamental protections afforded by the Constitution." *Mezzanatto*, 513 U.S. at 201 (collecting decisions). It would be passing strange—bizarre, in fact— to conclude that while a litigant can renounce his most basic freedoms under the United States Constitution, he is powerless to waive the protection of … ERISA's statute of repose. No way.

## IV

No matter how we come at the question, we arrive at the same answer: ERISA's limitation-of-actions provision, 29 U.S.C. § 1113(1), is subject to express waiver. Under *Pugh*, because Section 1113(1) doesn't erect a "jurisdictional" bar, it is presumptively waivable. Moreover, and in any event, there is just no good reason to conclude that Section 1113(1)—unlike other federal (and even constitutional) protections—can't be expressly waived simply because it's a statute of repose.

Accordingly, in response to the certified question—"Is the limitation of actions contained in 29 U.S.C. § 1113 subject to express waiver?"—we answer in the **AFFIRMATIVE**.

Question **ANSWERED** and case **REMANDED** for proceedings consistent with this opinion.