[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12137

_____

D.C. Docket No. 3:17-cv-00062-HES-JRK

DIMITRIOS I. BOURTZAKIS,

                                                                    Plaintiff-Appellant,

versus

UNITED STATES ATTORNEY GENERAL,
SECRETARY, DEPARTMENT OF HOMELAND SECURITY,
JACKSONVILLE FIELD OFFICE DIRECTOR, UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES,

                                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 9, 2019)

Before WILLIAM PRYOR and JILL PRYOR, Circuit Judges, and ROBRENO,[*] District Judge.

WILLIAM PRYOR, Circuit Judge:

This appeal presents the question whether a conviction for delivery of cocaine under Washington law, Wash. Rev. Code § 69.50.401(a)(1)(i) (1989), categorically qualifies as an "aggravated felony" under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43). The Department of Homeland Security denied Dimitrios Bourtzakis's application for naturalization on the ground that his prior conviction in Washington for delivery of cocaine is an aggravated felony under section 1101(a)(43), which bars him from establishing the "good moral character" necessary for naturalization. *Id.* §§ 1101(f)(8), 1427(a). Bourtzakis filed a complaint challenging that denial, *id.* § 1421(c), but the district court ruled that his prior conviction is an aggravated felony and dismissed his complaint. Because we agree with the district court that Bourtzakis's prior conviction categorically qualifies as an aggravated felony, we affirm.

## I. BACKGROUND

Bourtzakis, a citizen of Greece, has lawfully resided in the United States since 1974. He applied for naturalization in 2016, but the Department denied his application on the ground that his prior conviction of an "aggravated felony," 8

---

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

U.S.C. § 1101(a)(43), bars him from establishing the necessary "good moral character," *id.* §§ 1101(f)(8), 1427(a). In 1992, a Washington court convicted Bourtzakis of delivering cocaine in violation of the Uniform Controlled Substances Act, Wash. Rev. Code § 69.50.401(a)(1)(i) (1989). Bourtzakis challenged the denial of his application in a hearing before the Citizenship and Immigration Services, which reaffirmed that decision.

Bourtzakis then filed a complaint in the district court to review the denial of his application. *See* 8 U.S.C. § 1421(c). His complaint alleged that his conviction for delivery of cocaine was not an aggravated felony and did not bar him from establishing good moral character.

The government moved to dismiss Bourtzakis's complaint, Fed. R. Civ. P. 12(b)(6), on the ground that his prior conviction categorically qualified as a "drug trafficking crime," which is an aggravated felony under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B). Section 1101(a)(43)(B) defines "drug trafficking crime" to include any felony punishable under the federal Controlled Substances Act, *id.* (incorporating 18 U.S.C. § 924(c)(2)), and the government argued that Bourtzakis's conviction for delivery of cocaine under Washington law also would have been punishable as a felony under the federal Act. Bourtzakis responded that the Washington statute proscribes the act of "administering" a controlled substance, while the federal Act does not. He argued that because the

3

Washington statute proscribes more conduct than the federal Act, a conviction under the state statute does not categorically qualify as an aggravated felony.

The district court dismissed Bourtzakis's complaint. It ruled that Bourtzakis's prior conviction for delivery of cocaine categorically qualifies as an aggravated felony, which bars him from establishing good moral character.

## II. STANDARD OF REVIEW

We review *de novo* the dismissal of a complaint. *Culverhouse v. Paulson & Co.*, 813 F.3d 991, 993 (11th Cir. 2016).

## III. DISCUSSION

The Immigration and Nationality Act requires an applicant for naturalization to establish that he "is a person of good moral character," 8 U.S.C. § 1427(a), and an applicant cannot satisfy that requirement if, during the relevant time period, he had a prior conviction for an "aggravated felony." *Id.* § 1101(f)(8). Among the several offenses included in the definition of "aggravated felony" is "illicit trafficking in a controlled substance," which includes "a drug trafficking crime (as defined in section 924(c) of Title 18)." *Id.* § 1101(a)(43)(B). We must determine whether Bourtzakis's prior conviction qualifies as "a drug trafficking crime (as defined in section 924(c) of Title 18)" because the government does not argue that his conviction otherwise qualifies as "illicit trafficking in a controlled substance." *Id.*

4

Section 924(c) defines "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C. § 924(c)(2). Under federal law, a "felony" is an offense for which the maximum allowable term of imprisonment is more than one year. *See id.* § 3559(a)(1)–(5). The result "is that a noncitizen's conviction of an offense that the Controlled Substances Act . . . makes punishable by more than one year's imprisonment will be counted as an 'aggravated felony'" for purposes of determining whether he is a person of good moral character. *Moncrieffe v. Holder*, 569 U.S. 184, 188 (2013); *see* 8 U.S.C. § 1101(f)(8). "A conviction under either state or federal law may qualify, but a state offense constitutes a felony punishable under the [Controlled Substances Act] only if it proscribes conduct punishable as a felony under that federal law." *Moncrieffe*, 569 U.S. at 188 (citation and internal quotation marks omitted).

To determine whether a state offense is a felony punishable under the federal Act, we apply the categorical approach. *Id.* at 192. Under the categorical approach, we examine whether the state statute "'necessarily' proscribe[s] conduct that is an offense under the [Controlled Substances Act]" and whether the federal Act "'necessarily' prescribe[s] felony punishment for that conduct." *Id.* If the answer to both questions is affirmative, then the state statute qualifies as an "aggravated felony" under section 1101(a)(43)(B), *id.*, and a prior conviction under that statute

5

bars an applicant from establishing "good moral character," 8 U.S.C. § 1101(f)(8), for naturalization.

The categorical approach "is not an invitation to apply 'legal imagination' to the state offense." *Moncrieffe*, 569 U.S. at 191 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). Instead, to conclude that a state statute proscribes conduct not punishable under the federal Act "requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the reach of the federal Act. *Duenas-Alvarez*, 549 U.S. at 193; *see also Moncrieffe*, 569 U.S. at 191. To establish that realistic probability, an applicant for naturalization "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the [broad] manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193. The only exception to this rule is when "the statutory language itself, rather than 'the application of legal imagination' to that language, creates the 'realistic probability' that a state would apply the statute to conduct beyond" that proscribed by the federal Act. *Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066, 1072 (11th Cir. 2013) (quoting *Duenas-Alvarez*, 549 U.S. at 193).

Bourtzakis offers two arguments why the Washington statute is broader than the federal Act and does not categorically qualify as an "aggravated felony," 8 U.S.C. § 1101(a)(43). First, he argues that accomplice liability under the

6

Washington statute is broader than accomplice liability under the federal Act. Second, he argues that the Washington statute proscribes "administering" a controlled substance and the federal Act does not.

The government responds that Bourtzakis forfeited the first of those arguments, and Bourtzakis replies that, because he argued in the district court that his prior conviction was not an aggravated felony, he may now make any argument in support of that position on appeal. We agree with Bourtzakis.

"Parties can most assuredly waive or forfeit positions and issues on appeal, but not individual arguments." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1194 (11th Cir. 2018) (alterations adopted) (quoting *Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 883 n.5 (11th Cir. 2017)). "Indeed, in *Preston*, we rejected the theory that a plaintiff 'waived various arguments by failing to make them in response to the defendants' motion to dismiss in the district court,' the very theory [the government] raises in this appeal." *Id.* (alterations adopted) (quoting *Preston*, 873 F.3d at 883 n.5). This appeal presents one issue—whether Bourtzakis's Washington drug conviction qualifies as an aggravated felony—and Bourtzakis squarely presented that issue to the district court. He can now "make any argument in support of" the position that his conviction is not an aggravated felony; he is "not limited to the precise arguments [he] made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

7

Although Bourtzakis's arguments are not forfeited, they fail on the merits. We reject each argument in turn.

### A.  Accomplice Liability Under the Washington Statute Is No Broader than Under the Federal Act.

The Washington statute makes it "unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." Wash. Rev. Code § 69.50.401(a) (1989). This language closely tracks the relevant language in the federal Act. *See* 21 U.S.C. § 841(a)(1) ("[I]t shall be unlawful for any person . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."). But Washington also has a separate statute governing accomplice liability, which provides that "[a] person is an accomplice of another person in the commission of a crime if . . . [w]ith knowledge that it will promote or facilitate the commission of the crime, he" aids the other person in committing it. Wash. Rev. Code § 9A.08.020(3)(a) (1989); *see id.* § 9A.08.020(1)–(2).

Bourtzakis argues that the Washington statute for accomplice liability renders his statute of conviction categorically broader than the federal Act. He contends that accomplice liability is implicit in every charge under Washington law and that a person may be charged and convicted as an accomplice even if the charging documents and judgment of conviction make no mention of the accomplice statute. In other words, Bourtzakis argues that his statute of conviction,

8

Wash. Rev. Code § 69.50.401(a)(1)(i) (1989), proscribes the commission of that offense as both a principal and an accomplice.

We agree with Bourtzakis on this point. The Washington Supreme Court has explained that "[t]he law is settled in [Washington] that a verdict may be sustained upon evidence that the defendant participated in the commission of the crime charged, as an aider or abettor, even though he was not expressly accused of aiding and abetting and even though he was the only person charged in the information." *State v. Carothers*, 525 P.2d 731, 734 (Wash. 1974), *disapproved of in part on other grounds by State v. Harris*, 685 P.2d 584, 587 (Wash. 1984); *see also State v. McDonald*, 981 P.2d 443, 446–49 (Wash. 1999). And Washington courts have consistently upheld convictions under Washington's Uniform Controlled Substances Act on an accomplice theory of liability even where the defendant was charged as a principal. *See, e.g.*, *State v. Matson*, 587 P.2d 540, 542–43 (Wash. Ct. App. 1978); *State v. Johnson*, 68 P.3d 290, 292–94 (Wash. Ct. App. 2003); *State v. Nyegaard*, 226 P.3d 783, 784, 786 (Wash. Ct. App. 2010), *review granted and cause remanded on other grounds*, 260 P.3d 208 (Wash. 2011). Because the conduct a state statute proscribes "is a question of [state] law," we "look to the state's courts to answer this question." *United States v. Lockett*, 810 F.3d 1262, 1270 (11th Cir. 2016). And the Washington caselaw makes clear that a person may be held liable under the Washington drug statute if he commits that offense as

9

either an accomplice or a principal.

But Bourtzakis cannot establish a "realistic probability" that accomplice liability under the Washington statute "extend[s] significantly beyond" liability under the federal Act. *Duenas-Alvarez*, 549 U.S. at 193. After all, aiding and abetting a federal drug crime is "an offense under the [federal Act]," *Moncrieffe*, 569 U.S. at 192, notwithstanding that a separate federal statute, 18 U.S.C. § 2(a), provides that aiders and abettors of an offense against the United States are punishable as principals. Aiding and abetting "is an alternative charge in every [federal criminal indictment], whether explicit or implicit, and the rule is well-established, both in this circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense." *United States v. Walker*, 621 F.2d 163, 166 (5th Cir. 1980) (citation and internal quotation marks omitted); *cf. Duenas-Alvarez*, 549 U.S. at 189–90 (holding that aiding and abetting a theft qualifies as a generic "theft offense," 8 U.S.C. § 1101(a)(43)(G)). So the Washington statute is no broader than the federal Act if it proscribes conduct that qualifies as aiding and abetting an offense under the federal Act.

Bourtzakis argues that because Washington law imposes a lesser mens-rea requirement for accomplice liability than federal law, the Washington statute can be violated by conduct that is not an offense under the federal Act. He contends

10

that Washington law requires only that an accomplice *know* his actions will facilitate the commission of the drug crime, but federal law requires that an accomplice *intend* to facilitate the crime's commission. At least one of our sister circuits has adopted Bourtzakis's position. *See United States v. Valdivia-Flores*, 876 F.3d 1201, 1206–10 (9th Cir. 2017).

The Washington accomplice statute in effect at the time of Bourtzakis's conviction, which exists in substantially the same form today, imposes liability if a person aids the commission of a crime "[w]ith *knowledge*" that his aid "will promote or facilitate the commission of the crime." Wash. Rev. Code § 9A.08.020(3)(a) (1989) (emphasis added). And the Supreme Court has described the federal mens-rea requirement for accomplice liability as requiring that an accomplice *intend* to facilitate the crime's commission. *Rosemond v. United States*, 572 U.S. 65, 76 (2014) ("[A] person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate that offense's commission."). But despite this difference in language, the mens-rea requirements for accomplice liability under the Washington statute and the federal Act do not diverge.

To prove that a defendant aided and abetted an offense under the federal Act, "the prosecution must show that the defendant associated herself with a criminal venture, participated in it as something she wished to bring about, and sought by her actions to make it succeed." *United States v. Joseph*, 709 F.3d 1082,

11

1102 (11th Cir. 2013) (alterations adopted) (citation and internal quotation marks omitted). To be sure, the Supreme Court has described that mens-rea requirement as an "intent requirement." *Rosemond*, 572 U.S. at 76–77. But it has explained that this "intent requirement" for aiding and abetting a federal crime is "satisfied when a person actively participates in a criminal venture with full *knowledge* of the circumstances constituting the charged offense." *Id.* at 77 (emphasis added). For example, in *Pereira v. United States*, a mail fraud prosecution, the Court "found the requisite intent for aiding and abetting because the defendant took part in a fraud 'know[ing]' that his confederate would take care of the mailing." *Id.* (alteration in original) (quoting *Pereira v. United States*, 347 U.S. 1, 12 (1954)). In *Bozza v. United States*, the Court likewise "upheld a conviction for aiding and abetting the evasion of liquor taxes because the defendant helped operate a clandestine distillery 'know[ing]' the business was set up 'to violate Government revenue laws.'" *Id.* (alteration in original) (quoting *Bozza v. United States*, 330 U.S. 160, 165 (1947)). And in *Rosemond*, the Court held that a defendant aids and abets a violation of section 924(c), which prohibits "us[ing] or carr[ying]" a firearm "during and in relation to any . . . drug trafficking crime," 18 U.S.C. § 924(c)(1)(A), when he actively participates in a drug transaction and "knows that one of his confederates will carry a gun." *Rosemond*, 572 U.S. at 77. The Court explained that a defendant's knowledge that he is aiding a mere drug deal is not

12

enough; he must instead know that he is facilitating "an *armed* drug deal." *Id.* at 80. In short, the requirement that an accomplice to a federal crime "intend[ ] to facilitate that offense's commission" is satisfied by proof that the accomplice actively participated in the crime and knew the nature of the crime he was facilitating. *Id.* at 76–77.

Washington's mens-rea requirement for accomplice liability does not extend significantly beyond the federal requirement. In *State v. Cronin*, the Washington Supreme Court considered a question similar to the one in *Rosemond*: whether the Washington statute imposes accomplice liability if a defendant participates in a crime knowing his actions will promote "a crime" but not "the specific crime with which he or she is eventually charged." 14 P.3d 752, 757 (Wash. 2000). The Washington court held that "to be . . . an accomplice, [an] individual must have acted with knowledge that he or she was promoting or facilitating *the* crime for which that individual was eventually charged"—not just "*any* crime." *Id.* at 757–58. Because the trial courts in the two prosecutions on appeal instructed the juries that they could find accomplice liability if the defendants knew their conduct would facilitate the commission of "*a* crime," the state supreme court reversed the convictions of both defendants. *Id.* at 753–54, 756 (emphasis added). It explained that the erroneous instructions might have allowed the juries to convict without proof that the defendants knew they were specifically facilitating the respective

13

crimes of assault and murder, and not some lesser crime. *Id.* at 759.

As *Rosemond* and *Cronin* make clear, the mens-rea requirements for accomplice liability under Washington and federal law mirror one another. Under both Washington and federal law, a person is liable as an accomplice if he actively participates in a crime and knows the nature of the crime he is facilitating. Bourtzakis has not identified any Washington caselaw that establishes a "realistic probability" that accomplice liability under the Washington drug statute "extend[s] significantly beyond" accomplice liability under the federal Act. *Duenas-Alvarez*, 549 U.S. at 193.

Bourtzakis contends that *State v. Wilson*, 631 P.2d 362 (Wash. 1981), "held that merely being physically present during the commission of a crime—without actually participating in any way—was sufficient to establish accomplice liability for a conviction under" the Washington drug statute, but *Wilson* held no such thing. Wilson was convicted as an accomplice to the delivery of a controlled substance because he induced an apparently unwilling buyer to purchase marijuana. *Id.* at 363–64. During a controlled drug buy, an undercover agent asked Wilson's brother if he could buy an ounce of marijuana. *Id.* at 363. The brother "told him that he could and quoted a price of $100 per ounce." *Id.* When the "agent remarked that the price was high," Wilson "told the agent that it was very good 'pot' and well worth the money," and the agent proceeded to buy marijuana from

14

Wilson's brother. *Id.* The Washington Supreme Court upheld Wilson's conviction as an accomplice because he "attempt[ed] to persuade an apparently reluctant prospect to make a purchase." *Id.* at 364. In other words, Wilson "participated in [the drug deal] as something [he] wished to bring about, and sought by [his] actions to make it succeed"—the same proof required to sustain a conviction for aiding and abetting a Controlled-Substances-Act offense under federal law. *Joseph*, 709 F.3d at 1102 (citation and internal quotation marks omitted). *Wilson* does not establish a realistic probability that accomplice liability under Washington law is broader than accomplice liability under the federal Act. To the contrary, it reinforces our conclusion that the state and federal mens-rea requirements for accomplice liability are the same.

Bourtzakis argues our decision in *Ramos* makes clear that he need not identify specific state caselaw to establish a realistic probability that accomplice liability for drug delivery under Washington law is broader than accomplice liability under the federal Act, 709 F.3d at 1072, but he misunderstands our precedent. In *Ramos*, we held that a party need not identify specific state caselaw applying a state statute more broadly than its federal analogue when "the statutory language itself, rather than 'the application of legal imagination' to that language, creates the 'realistic probability' that a state would apply the statute to conduct beyond" the relevant federal crime. *Id.* The problem for Bourtzakis is that the

15

language of the Washington statute does not create a realistic probability that accomplice liability in Washington is broader than under federal law. When one compares the language of the Washington statute, as interpreted in *Cronin*, to the relevant federal precedent defining the federal mens-rea requirement for accomplice liability, it becomes clear that the two standards do not diverge to any significant degree.

We are not persuaded by the decision of the Ninth Circuit that adopted Bourtzakis's position. *See Valdivia-Flores*, 876 F.3d at 1206–10. The Ninth Circuit asserted that "Washington's criminal law expressly codifies the distinction between intent and knowledge and makes plain that knowledge is a less demanding mens rea requirement." *Id.* at 1207. And it explained that "[t]he same distinction exists in federal law." *Id.* Those statements are true but beside the point. As *Rosemond* makes clear, the "intent" required for federal accomplice liability is satisfied by proof that the accomplice actively participated in the crime and knew the nature of the crime—the same proof of mens rea that Washington requires for accomplice liability. 572 U.S. at 76–77. Despite its different terminology, the Washington standard is no broader than the federal standard. The Ninth Circuit failed to address *Rosemond* and related precedents on this point.

The Ninth Circuit also relied on decisions of the Washington Supreme Court to conclude that accomplice liability in Washington is broader than under federal

16

law, but those decisions hold only that an accomplice need not share the *principal's* state of mind when principal liability for a crime requires the specific intent to achieve a particular result. *Valdivia-Flores*, 876 F.3d at 1207–08 (citing *State v. Thomas*, 208 P.3d 1107, 1111 (Wash. 2009) ("To convict an accomplice of premeditated murder in the first degree, the State need not show that the accomplice had the intent that the victim would be killed. The prosecution need only prove that the defendant knew his actions would facilitate the crime for which he was eventually charged." (citation and internal quotation marks omitted)); and *State v. Roberts*, 14 P.3d 713, 731–32 (Wash. 2000) ("The accomplice liability statute requires only a mens rea of knowledge . . . . [A]n accomplice, like a felony murder defendant, may be convicted with a lesser mens rea . . . than a principal to premeditated first degree murder.")). If an accomplice participates in a specific-intent crime and knows the general nature of the crime he is facilitating, he is liable regardless of whether he specifically intended the result of the principal's actions. *See Cronin*, 14 P.3d at 755–57, 759 (explaining that an accomplice could be convicted of premeditated murder if he participated in the crime and knew he was facilitating the crime of *murder*, not only assault, even if he did not specifically intend that the principal kill the victim).

Neither the Ninth Circuit nor Bourtzakis has identified any federal authority holding that an accomplice to a specific-intent crime must share the principal's

17

specific intent to achieve an unlawful result, and we are unaware of any. In any event, because Bourtzakis was not convicted of a specific-intent crime, any hypothetical difference between the state and federal mens-rea requirements for aiding and abetting a specific-intent crime would be of no benefit to him.

### B. The Washington Statute Is No Broader than the Federal Act Regarding "Administering" a Controlled Substance.

Bourtzakis argues the Washington statute is broader than the federal Act because it proscribes "administering" a controlled substance and the federal Act does not, but we again disagree. The federal Act proscribes "administering" a controlled substance, so the Washington statute is no broader than the federal Act in this respect.

The federal Act makes it unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Bourtzakis latches on to the federal definition of "distribute," which is "to deliver (*other than by administering or dispensing*) a controlled substance or a listed chemical." *Id.* § 802(11) (emphasis added). The term "administer" means "the direct application of a controlled substance to the body of a patient or research subject by . . . a practitioner . . . or . . . [by] the patient or research subject at the direction and in the presence of the practitioner." *Id.* § 802(2). Based on these provisions, Bourtzakis argues the federal Act does not proscribe "administering" a controlled substance and is narrower than the

18

Washington statute, which does.

The parties dispute whether the Washington statute proscribes "administering" a controlled substance. But we need not resolve that question because, even if the Washington statute proscribes "administering" a controlled substance, so does the federal Act. The federal Act prohibits not only "distribut[ing]" a controlled substance, but also "dispens[ing]" a controlled substance. *Id.* § 841(a)(1). And "dispens[ing]" means "to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing *and administering* of a controlled substance." *Id.* § 802(10) (emphasis added). So the federal Act's prohibition of dispensing a controlled substance includes "administering" a controlled substance, and the Washington statute is no broader than the federal Act in this respect.

## IV. CONCLUSION

We **AFFIRM** the dismissal of Bourtzakis's complaint.

19

ROBRENO, District Judge, concurring in part and concurring in the judgment:

I agree with the majority's ultimate conclusions. However, I write separately because I disagree with the method the majority uses in rejecting Bourtzakis's first argument regarding the breadth of the Washington accomplice liability statute.

Specifically, I agree that the elements found in the statute of conviction, Washington Revised Code § 69.50.401(a) (1989), are no broader than those of the generic federal offense found in 21 U.S.C. § 841(a)(1). At the relevant time, Section 69.50.401(a) provided that it was "unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance," while Section 841(a)(1) provides that it is "unlawful for any person knowingly or intentionally" "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." As discussed by the majority, these statutes prohibit the same conduct and are coextensive. This should end the inquiry and foreclose Bourtzakis's overbreadth arguments.

However, Bourtzakis argued that: (1) the Washington accomplice statute is implicit in every criminal charge, including Section 69.50.401(a); and (2) the analogous federal aiding and abetting statute is narrower than the state accomplice statute. Therefore, Bourtzakis contended that Section 69.50.401(a) is broader than Section 841(a)(1) once the accomplice liability statute is incorporated into the statute of conviction by implication. The majority accepts the first part of this

20

argument, that in conducting the categorical analysis, the court should examine not only the statute of conviction, but also the accomplice liability statute. This is where I depart from the majority's reasoning. The majority then explains at length why the *mens rea* in the state and federal accomplice liability statutes are the same and, thus, the state statute of conviction is no broader than the federal analog. In my view, this part of the analysis is unnecessary.

The aiding and abetting and accomplice liability statutes examined by the majority are, as acknowledged by the majority, separate from the statute under which Bourtzakis was convicted. They are, therefore, not relevant for purposes of the categorical analysis. In conducting a categorical analysis, the court is directed to compare only the elements of the state *statute of conviction* with its generic federal counterpart. *Gordon v. U.S. Att'y Gen.*, 861 F.3d 1314, 1318 (11th Cir. 2017) ("Under the categorical approach, the court examines solely 'whether "the state statute defining the crime of conviction" categorically fits within the "generic" federal definition of a corresponding aggravated felony.'" (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 189 (2013))); *Spaho v. U.S. Att'y Gen.*, 837 F.3d 1172, 1177 (11th Cir. 2016) ("The court must 'compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic crime,"' and conviction under the state statute will only constitute a conviction for the generic offense 'if the statute's elements are the same as, or

21

narrower than, those of the generic offense.'" (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013))). A comparison of the aiding and abetting and accomplice liability statutes should not factor into the analysis, even if accomplice liability could be a conceivable avenue to reach a conviction under Section 69.50.401(a).[1]

I recognize that accomplice liability and direct liability are coexistent under Washington law and there is no legal difference between a principal and an accomplice. *See, e.g.*, *State v. McDonald*, 981 P.2d 443, 448 (Wash. 1999) ("we have made clear the emptiness of any distinction between principal and accomplice liability: 'The legislature has said that anyone who participates in the commission of a crime is guilty of the crime and should be charged as a principal, regardless of the degree or nature of his participation. . . . *The elements of the crime remain the same*.'" (quoting *State v. Carothers*, 525 P.2d 731, 736 (Wash. 1974))). However, the focus of the categorical analysis should not be on the theory of liability, but upon the elements of the crime as described in the statute of conviction. As the dissent noted in *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017), and as is true here: "the majority has impermissibly veered away from the statute of conviction" to reach a holding "based on its analysis of a statute that was not part of the prosecution or conviction in this case. Our analysis should have been on

---

[1] Accomplice liability was not at issue in this case.

22

the actual statute of conviction, Wash. Rev. Code § 69.50.401." *Id.* at 1214 (dissenting opinion).

Because the elements of Washington Revised Code § 69.50.401(a) encompass no more than those found in 21 U.S.C. § 841(a)(1), Bourtzakis's argument that the Washington statute is categorically broader than its federal counterpart fails. Whether the *mens rea* is or is not comparable in the state and federal accomplice liability statutes does not impact this analysis.

The majority's view on this issue unreasonably expands the categorical analysis and opens up the possibility that any Washington criminal statute (and perhaps that of any other state) could be found broader than the corresponding federal criminal statute based not solely on a comparison of the elements of the crime of conviction, but on an entirely separate comparison of the state and federal accomplice liability statutes.

23